# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

IN RE:                                  **CASE NO. 22-20400**

**ALFRED MILLER CONTRACTING COMPANY,**
*Debtor* [1]                             **CHAPTER 11**

---

## JOINT MOTION FOR ENTRY OF INITIAL AND FINAL ORDERS (I) DISMISSING THE BANKRUPTCY CASE; (II) ESTABLISHING PROCEDURES AND DEADLINES WITH RESPECT TO FINAL FEE APPLICATIONS FOR ALL PROFESSIONALS; (III) EXCULPATING CERTAIN PARTIES FROM LIABILITY IN CONNECTION WITH THE BANKRUPTCY CASE; (IV) PRESERVING THE COURT'S PRIOR ORDERS; AND (V) GRANTING RELATED RELIEF

---

**COME NOW,** through undersigned counsel, Alfred Miller Contracting Company ("**AMC**" or the "**Debtor**"), chapter 11 debtor-in-possession in the above captioned bankruptcy case (the "**Bankruptcy Case**")[2] and MZJV-GPX, an unincorporated joint venture between CB&I LLC, a Texas Limited Liability Company, and Zachry Industrial, Inc., a Delaware corporation, (collectively, "**MZJV**"; together with the Debtor, "**Movants**"), who file this motion (the "**Motion**") seeking orders substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (the "**Dismissal Order**" and together with **Exhibit A**, the "**Proposed Orders**"):

(i)      dismissing the Bankruptcy Case;

(ii)      establishing and approving procedures for the filing and approval of final fee applications by professionals retained in the Bankruptcy Case ("**Professionals**"), and providing for payment of fees incurred by Professionals in the Bankruptcy Case ("**Professional Fees**");

(iii)      exculpating certain parties from liability in connection with the Bankruptcy Case;

---

[1] The last four digits of the Debtor's federal tax identification number are 2446. The Debtor's principal place of business is located at 1177 L Miller Road; Lake Charles, LA 70605.

[2] The chapter 11 bankruptcy estate of Alfred Miller Contracting Company is herein referred to as the "**Estate**".

(iv)     preserving the Court's prior orders; and

(v)     providing such other related relief as is just and necessary.

In support of the Motion, Movants respectfully represent as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Western District of Louisiana (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *S.O. 1.32 General Order of Reference* from the United States District Court for the Western District of Louisiana, dated June 1, 2012.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and Movants confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105(a), 305, 349, and 1112(b) of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), rules 1017, 2002, 6007 and 9013 of the Federal Rules of  Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 1017-1 of the Local Bankruptcy Rules (the "**Local Rules**").

## BACKGROUND

### I.    **The Golden Pass Export Project and Subcontract**

4.     Embarking upon a $10 billion project to engineer, procure, and construct the three train natural gas liquefication export facility known as the Golden Pass Liquid Natural Gas Export Project (the "**Export Project**") near Sabine Pass, Texas, its owner, Golden Pass Products LLC

entered into a contract with CCZJV-GPX. In turn, CCZJV-GPX authorized its affiliate, MZJV, to perform the construction/subcontract work for the Export Project.

5.     Thereafter, MZJV and the Debtor, on or about October 20, 2020, entered into a contract (the "**Subcontract**") for a fixed price of $85,000,000.00, modified only by the change order procedure set forth therein. The Debtor is considered a major subcontractor on the Export Project, and, under the Subcontract, was responsible for designing, fabricating, and constructing eleven precast concrete buildings (over 200,000 square feet combined) and three operator shelters, as well as remodeling two existing buildings (that AMC built in 2008) necessary to operate the facility. This scope of work included providing engineering, material supply, construction, pre-commissioning and commissioning for buildings, building mechanical, and building electrical works. In connection with the Debtor's performance under the Subcontract, Hartford Accident & Indemnity Company ("**Hartford**") and the Debtor furnished Performance and Payment Bonds to MZJV.

6.     As early as September 2020, and repeatedly thereafter, the Debtor  claimed that COVID-19 impacted its ability to perform the work due to increased labor and material costs, subcontractor pricing and supply chain delays. In turn, AMC and MZJV became embroiled in disputes over the Subcontract, including disputes regarding: (a) AMC's entitlements arising from COVID-19 related impacts; (b) various disputed change requests and change orders; (c) liens and bond claims filed by AMC's subcontractors on the Export Project; (d) allegations of default by both parties; and (e) progress payments purportedly withheld (collectively, the "**Disputed Issues**").

## II.     The Bankruptcy Case and Adversary Proceeding

7.     AMC contends that the financial hardships flowing from the unresolved Disputed

Issues served as the catalyst for AMC filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 14, 2022 (the "**Petition Date**").[3] The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[4]

8.    Contemporaneous with filing its petition for relief, the Debtor sought leave from the Court to file a complaint (and related exhibits) against MZJV (the "**AP Complaint**") under seal[5] to bring the Disputed Issues before the Court and seek (1) judicial declarations that the Debtor is entitled to an adjustment of the Subcontract price and that the Debtor is not in default under the terms of the Subcontract; (2) judgment in its favor for MZJV's breach of contract; and (3) upon judgment in its favor, an order authorizing and approving the Debtor's assumption of the Subcontract pursuant to 11 U.S.C. § 365. MZJV disputed the allegations in the AP Complaint.

9.    On November 16, 2022, the Court designated the Bankruptcy Case a Complex Chapter 11 Bankruptcy Case[6] and authorized the Debtor to file the AP Complaint under seal, thereby commencing Adversary Proceeding Number 22-2004 (the "**Adversary Proceeding**").[7]

10.    On December 1, 2022, the United States Trustee (the "**UST**") appointed the Official

---

[3] Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's debt structure and additional information on the events leading to the Bankruptcy Case are contained in the *Declaration of Todd Nicholson in Support of First Day Motions and Applications*. In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Nov. 14, 2022), ECF No. 18.

[4] The statements regarding the rationale for the filing of this Chapter 11 case are AMC's and AMC's alone. MZJV does not adopt these statements. MZJV reserves all of its rights in this regard.

[5] *Ex Parte Motion for Leave to File Complaint Under Seal and Memorandum in Support*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Nov. 14, 2022), ECF No. 14.

[6] *Order Designating Case as Complex Chapter 11 Case*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Nov. 16, 2022), ECF No. 54.

[7] *Order Granting Ex Parte Motion for Leave to File Complaint Under Seal and Memorandum in Support*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Nov. 16, 2022), ECF No. 55.

Committee of General Unsecured Creditors (the "**Committee**").[8]

### III. The Post-Petition Negotiations Concerning the Disputed Issues and the Settlement Agreement

11.     To resolve the Disputed Issues, the Debtor, MZJV, and their respective counsel first convened on November 30, 2022. While these discussions were productive, the parties could not reach a resolution, but agreed a third party mediator could be beneficial. Thus, on December 29, 2022, Movants began mediation. These efforts led to the agreement (the "**Settlement Agreement**") encapsulated in Movants' joint motion to approve their compromise (the "**Compromise Motion**").[9] Ultimately, the Court approved the Settlement Agreement on March 9, 2023 (the "**Effective Date**").[10]

12.     While the Settlement Agreement is discussed in greater detail in the Compromise Motion, generally speaking, it involves:

(i)     descoping AMC's obligations under the Subcontract in exchange for a reduced sum (which, depending upon the scope of work performed, is to be paid by MZJV or Hartford);

(ii)    AMC assuming and assigning certain executory contracts to MZJV;

(iii)   revising the penal sums in the bonds Hartford issued; and

(iv)    paying: (a) Exhibit F Claimants, i.e., "Subcontractors, Vendors, and Suppliers who may be owed progress payments for labor and material performed through the Effective

---

[8] *Notice of Appointment of Unsecured Creditors' Committee*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 1, 2022), ECF No. 104. The Committee is currently comprised of the following members: (1) Star Service, Inc. of Baton Rouge; (2) Kaough & Jones Electric Company, Inc.; (3) Prestique, Inc. d/b/a Ranger Roofing & Construction; and (4) Sigma Engineers, Inc.

[9] *Joint Emergency Motion for (I) Approval of Compromise Between the Debtor, MZJV-GPX and Hartford Accident & Indemnity Company; (II) Leave to File Related Settlement Agreement Under Seal and Memorandum in Support; and (III) for Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Feb. 15, 2023), ECF No. 207.

[10] *Order Approving Joint Motion for Compromise*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 9, 2023), ECF No. 236.

Date or from whom retainage has been withheld relating to Subcontract Work"; and (b) Exhibit "A" Parties (together, the "**Exhibit Claimants**").[11]

13.    The Settlement Agreement contemplates ultimately dismissing both the Adversary Proceeding and Bankruptcy Case; however, this requires the Debtor, MZJV (or both) to comply with a series of deadlines:

| Party | Action | Deadline | Status |
|-------|--------|----------|--------|
| Both | File a joint motion under § 365 to assume and assign MZJV's selected executory contracts | Within 14 days of the Effective Date | Complete. See ¶ 14. |
| MZJV | Remit a specified amount to the Debtor | Within 14 days of the Effective Date | Complete. See ¶ 15. |
| MZJV | File a written objection under § 502 to the particular Exhibit F Claimant's claim (if necessary) | Within 30 days after the Effective Date | No timely objections filed. |
| MZJV | Pay the Exhibit "A" Parties the amounts reflected on Exhibit A to the Settlement Agreement | Within 30 days after the later of (a) the Effective Date; or (b) MZJV's receipt of a properly completed W-9 form for the Exhibit A Claimant | Complete. See ¶ 16. |
| MZJV | Pay Exhibit F Claimants in the amounts (if there is no objection) identified on Exhibit F to the Settlement Agreement | Within 45 days after the later of (a) the objection deadline; or (b) MZJV's receipt of a properly completed W-9 form for the Exhibit F Claimant | Complete See ¶ 16. |
| Both | Jointly file (with each to pay their own costs and attorneys' fees), motions to dismiss the Adversary Proceeding and Bankruptcy Case | Within 3 business days after the later of: (a) paying, in full, the specified amount to the Debtor, Exhibit "A" Parties, and Exhibit F Claimants; (b) the Bankruptcy Court approving the Assignment Motion; and (c) resolution of any objection to the claim of an Exhibit F Claimant. | Accomplished via the instant motion and motion to dismiss the Adversary Proceeding to be filed contemporaneously. See ¶ 18. |

14.    On March 23, 2023, Movants jointly filed a motion for AMC to assume and assign to MZJV certain executory contracts (the "**Assignment Motion**").[12] Four (4) subcontractors –

---

[11] *Joint Emergency Motion for (I) Approval of Compromise Between the Debtor, MZJV-GPX and Hartford Accident & Indemnity Company; (II) Leave to File Related Settlement Agreement Under Seal and Memorandum in Support; and (III) for Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Feb. 15, 2023), ECF No. 207.

[12] *Joint First Omnibus Motion for Entry of an Order (I) Authorizing the Debtor to Assume and Assign Certain Executory Contracts to MZJV-GPX and (II) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 23, 2023), ECF No. 256.

Kaough & Jones Electric Company, Inc., Star Service Inc. of Baton Rouge, Prestique, Inc. d/b/a Ranger Roofing & Construction, and Signma Engineers, Inc. – objected to the Assignment Motion.[13] On April 28, 2023, the Court entered an order granting the Assignment Motion.[14] In total, this relief involves paying subcontractors over $11.6 million in cure costs. To date, the pre-petition cure amounts have been remitted to the counterparties and the Movants contemplate the post-petition amounts will be remitted before the hearing on this Motion (the Court's recent order grants MZJV until May 15, 2023 to do so). To the extent they have not, Movants will apprise the Court.

15.     MZJV timely satisfied its obligation under the settlement agreement to remit a sum certain to the Debtor within fourteen days of the Settlement Agreement's Effective Date.

16.     While the Settlement Agreement requires MZJV to remit payments to the Exhibit Claimants, the Court, on April 4, 2023, authorized the Debtor to enter into that certain *Agreement Regarding Payments to Certain Subcontractors* (the "**Payment Agreement**"), whereby MZJV would first pay the Debtor, who would then remit payment to the Exhibit Claimants on MZJV's behalf.[15] As of the filing of this Motion, the Exhibit Claimants have been paid pursuant to the Settlement Agreement and Payment Agreement.

---

[13] *Response to Joint First Omnibus Motion for Entry of an Order (I) Authorizing the Debtor to Assume and Assign Certain Executory Contracts to MZJV-GPX and (II) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 12, 2023), ECF No. 277.

[14] *Order Granting Joint First Omnibus Motion for entry of an Order (I) Authorizing the Debtor to Assume and Assign Certain Executory Contracts to MZJV-GPX and (II) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 28, 2023), ECF No. 291.

[15] *Order Granting Ex Parte Motion to Authorize Entry into Agreement*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 4, 2023), ECF No. 272.

17.     Beyond pre-petition debts satisfied pursuant to the Settlement Agreement and prior orders of the Court[16], there remain approximately $549k in pre-petition general unsecured claims outstanding (the "**Outstanding Claims**"). The Settlement Agreement, however, does not require the Debtor to completely satisfy all prepetition general unsecured debt *before* dismissing the Bankruptcy Case and Adversary Proceeding. Even still, the Debtor has the funds available and the Proposed Orders require the Debtor to satisfy the Outstanding Claims within fifteen (15) days of the intended May 31, 2023 dismissal date (the "**Dismissal Date**"), and until satisfied, all non-bankruptcy state law rights as to all holders of Outstanding Claims are reserved by the Proposed Orders.

18.     Contemporaneous with this Motion, Movants have filed a separate motion to dismiss in the Adversary Proceeding that will take effect upon filing the Certification (as defined and discussed below).

## LAW AND ARGUMENT

### I.    The Court Should Enter a Structured Dismissal Under §§ 105(a) and 1112(b)

19.     To avoid unnecessary administrative expenses and bring the Bankruptcy Case to an orderly and expeditious conclusion, Movants seek a structured dismissal of the Bankruptcy Case which will lead to all general unsecured creditors receiving a full recovery for their pre-petition claims. While structured dismissals are not *explicitly* authorized by the Bankruptcy Code, Courts have found a combination of §§ 105(a) and 1112(b) (and sometimes § 305(a)) grant the authority

---

[16] *See e.g., Order (I) Authorizing the Payment of Certain Critical Prepetition (A) Job Costs in the Ordinary Course of Business and (B) Revolving Credit Card Debt; (II) Releasing Claims Against COMDATA; (III) Authorizing Post Petition Credit Under § 364; and (IV) Granting Related Relief,* In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 16, 2022), ECF No. 165 (authorizing payment of $717,464.41 in prepetition claims); *Order Granting Emergency Motion for an Order (I) Authorizing the Payment of Certain Critical Prepetition Vendor Costs in the Ordinary Couse of Business and (II) Granting Related Relief,* In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 29, 2023), ECF No. 266 (authorizing payment of $6,700.00 in prepetition claims).

to fashion relief.[17] Viewed as "a 'hybrid dismissal and confirmation order'",[18] structured dismissals have "'emerged as a cost-effective exit strategy from Chapter 11 bankruptcy.'"[19] In particular, they can alter "a chapter 11 dismissal's ordinary restorative consequences" or attach special conditions.[20] Their facilitation of "'efficient case resolutions'" have led certain Courts to view them with favor.[21] A structured dismissal is not only contemplated by the Settlement Agreement already approved by this Court, it is the ideal mechanism to resolve the Bankruptcy Case and Adversary Proceeding.

## A. Dismissal is Appropriate Under § 1112(b)

20.     Dismissal under § 1112(b) of the Bankruptcy Code contemplates a showing of: (i) cause; and (ii) being in the best interest of the creditors and estate. Both elements are met here. Barring a finding dismissal is not in the best interests of the creditors and estate, if cause is established, a court is required to dismiss the case under 11 U.S.C. § 1112(b).[22]

### i.     There is Cause to Dismiss the Bankruptcy Case

---

[17] *In re Olympic 1401 Elm Assocs., LLC*, No. 16-30130-hdh, 2016 Bankr. LEXIS 3164, at *5 (Bankr. N.D. Tex. Aug. 26, 2016) ("The Court has the authority to grant a Chapter 11 structured dismissal pursuant to sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code."); *In re Buffet Partners, L.P.*, No. 14-30699-HDH-11, 2014 Bankr. LEXIS 3204, at *11 (Bankr. N.D. Tex. July 23, 2014) ("11 U.S.C. §§ 1112(b) and 105(a) provide this court with the requisite authority to fashion the dismissal order that the parties seek. Although this process is not explicitly spelled out in § 1112(b), it is clearly within the sphere of authority Congress intended to grant to bankruptcy courts in the context of dismissing chapter 11 cases.").

[18] *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 456 (2017) (quoting AM. BANKR. INST. COMM'N TO STUDY REFORM OF CHAPTER 11, 2012-2014 FINAL REPORT AND RECOMMENDATIONS 270 (2014)).

[19] *In re Positron Corp.*, 556 B.R. 291, 295 (Bankr. N.D. Tex. 2016) (quoting Richard A. Bixter, Jr., *Structured Dismissals: Saving Time and Money in Corporate Bankruptcy*, JNL. OF BANKR. L. 2016.06-3 (2016)).

[20] *In re Fleetstar LLC*, 614 B.R. 767, 783 (Bankr. E.D. La. 2020).

[21] *Positron*, 556 B.R. at 295 (quoting AM. BANKR. INST. COMM'N TO STUDY REFORM OF CHAPTER 11, 2012-2014 FINAL REPORT AND RECOMMENDATIONS 271 (2014)).

[22] *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." (citing 11 U.S.C. § 1112(b))) (emphasis in original).

21.     While not expressly defined by the Bankruptcy Code, 11 U.S.C. § 1112(b)(4) provides a non-exhaustive list of 16 examples that may constitute cause.[23] Regardless, bankruptcy courts are afforded "wide discretion" in finding cause and adjudicating a bankruptcy case.[24]

22.     As this Court is aware, the Debtor sought protection under the Bankruptcy Code as a result of an inability to resolve the Disputed Issues with MZJV and the impending severe financial consequences thereof. As the Settlement Agreement resolves the Disputed Issues and enables the Debtor to pay its pre-petition debts in full (either before or immediately following dismissal), the Debtor no longer requires the Bankruptcy Code's protections. In fact, with such resolution in place, the Bankruptcy Case no longer serves a purpose to warrant its continuation. Such factors have previously been found to constitute "cause" to dismiss a bankruptcy case[25], a finding further strengthened, as here, by the reduction of administrative expenses dismissal will bring.[26] Significantly, dismissal at this juncture will permit the Debtor to avoid the attorneys' fees and UST quarterly fees that will be required if the Debtor moves forward through chapter 11;

---

[23] 11 U.S.C. §§ 1112(b)(4)(A)-(P). *See also, Fleetstar*, 614 B.R. at 781 ("The Bankruptcy Code does not expressly define 'cause,' but does set forth a non-exhaustive list of examples of events that may constitute cause"); *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'" (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)); *3 Ram*, 343 B.R. at 117 ("While the enumerated examples of cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not.") (citation omitted).

[24] *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) ("The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case." (citing *In re State St. Assocs., L.P.*, 348 B.R. 627, 638 (Bankr. N.D.N.Y. 2006)). *See also, In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) ("A determination of whether or not cause under section 1112(b) exists rests in the sound discretion of the bankruptcy court." (citing *In re Koerner*, 800 F.2d 1358, 1367 n.7 (5th Cir. 1986))).

[25] *In re Forum Health*, 444 B.R. 848, 856 (Bankr. N.D. Ohio 2011) ("To the extent a debtor has the resources to pay all of its creditors in full outside the protection of the Bankruptcy Code, continuation of a bankruptcy case does not serve a bankruptcy purpose…Where, as here, a debtor no longer requires the protection of the Bankruptcy Code and the Bankruptcy Court, such debtor has established cause for dismissing the bankruptcy case." (citing *AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.)*, 360 B.R. 398, 401 (Bankr. D.N.H. 2007))); *In re Kent*, No. 2:07-bk-03238-SSC, 2008 Bankr. LEXIS 4332, at *19 (Bankr. D. Ariz. Sep. 23, 2008) ("Based on the change in Debtors' circumstances that have resulted from their settlement with K&W, cause exists to dismiss this case.").

[26] *Kent*, 2008 Bankr. LEXIS 4332, at *20 ("coupling the reduction in administration costs with some other benefit, strengthens the argument that cause exists to dismiss the case.").

similarly, the Estate will be reduced by statutory trustee fees and attorneys' fees for the chapter 7 trustee should the Court convert the Bankruptcy Case to chapter 7.

23.     With the Settlement Agreement resolving the Disputed Issues, the Debtor is in position to emerge from bankruptcy unencumbered by liquidity and operational concerns.[27] Consequently, cause exists here to dismiss the Bankruptcy Case.

ii.     Dismissal is in the Best Interests of the Creditors and Estate[28]

24.     Similar to the element of cause, "'[t]here is no bright-line test to determine whether conversion or dismissal is in the best interest of creditors and the estate.'"[29] However, courts are afforded "'wide' discretion" in making this determination[30] and have considered several factors.[31]

25.     As the Court is aware, AMC contends the sole catalyst for the Bankruptcy Case was the dire financial impact the Debtor faced with the Disputed Issues left unresolved. With that

---

[27] *In re OptInRealBig.com, LLC*, 345 B.R. 277, 283 (Bankr. D. Colo. 2006) ("The Debtors no longer desire to continue down the road to reorganization. The evidence makes it clear moreover that reorganization is not necessary for these Debtors. They are able to return to the marketplace and operate successfully without the assistance of the Bankruptcy Court. Reorganization is a process that is costly and time consuming for the parties and for the Court. Where there has been a material change in a debtor's circumstances, such that reorganizing under the protection of the Bankruptcy Court no longer serves the interests of a debtor or its creditors, then the Court believes that cause exists for dismissal or conversion of the case under § 1112(b).").

[28] MZJV makes no representations whatsoever regarding the Debtor's financial condition or its ability to perform its obligations outside of bankruptcy. All such statements are the Debtor's alone.

[29] *Fleetstar*, 614 B.R. at 781 (citing *In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011)).

[30] *Fleetstar LLC*, 614 B.R. at 781 (quoting *Koerner*, 800 F.2d at 1367 (citing S. REP. NO. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5903)).

[31] *Fleetstar*, 614 B.R. at 782 ("1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal. 2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted. 3. Whether the debtor would simply file a further case upon dismissal. 4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors. 5. In assessing the interest of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise. 6. Whether any remaining issues would be better resolved outside the bankruptcy forum. 7. Whether the estate consists of a 'single asset.' 8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests. 9. Whet[h]er a plan has been confirmed and whether any property remains in the estate to be administered. 10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns." (citing *In re BH S&B Holdings, LLC*, 439 B.R. 342 (Bankr. S.D.N.Y. 2010) (citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6] (16th ed. 2009)))).

hurdle cleared by the approved Settlement Agreement and the parties performance of their respective obligations under the Settlement Agreement, the Debtor submits that it can emerge as a healthy and economically viable company.[32] Indeed, the Debtor submits that it can now satisfy its debts in the ordinary course of business.[33] Certainly, conversion is not a suitable path, as the Debtor's "economic engine is turned off" and creditors are left competing "for a share of the carcass."[34] Likewise, requiring the Debtor to run the gauntlet of confirming a plan would be wasteful, time consuming and significantly diminish recoveries.[35] Consequently, it is clear that creditors would fare much better outside of bankruptcy.[36]

26.     Dismissal is further bolstered by the fact that the Debtor has acted in the best interests of its creditors. At this time, JD Bank and MZJV are supportive of the proposed dismissal; however, Movants hope the Committee and the UST will later express their support.[37] As such,

---

[32] *In re Heritage Wood'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr. M.D. Fla. 1987) ("bankruptcy courts should become involved in cases only if the bankruptcy court's services are needed to truly reorganize a debtor who is having financial problems" (citing *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984))). *See also*, *OptInRealBig.com*, 345 B.R. at 290 ("But in this particular case, dismissal also means the reduction of a $57 million claim against the Debtors down to $7 million, not to mention the elimination of the American Family claims. That makes the economic value of the Debtors substantially greater outside of bankruptcy and the benefit to the estate even more compelling.").

[33] *In re Melp, Ltd.*, 143 B.R. 890, 892 (Bankr. E.D. Mo. 1992) ("Dismissal is in the best interests of creditors because since the Debtor has paid all its pre-petition creditors and is remaining current on its post-petition obligations, there is no need for continued oversight by the Bankruptcy Court."), *rev'd on other grounds*, 179 B.R. 636 (E.D. Mo. 1995).

[34] *OptInRealBig.com*, 345 B.R. at 290 ("Upon conversion, that economic engine is turned off and Infinite Monkeys can do nothing more than compete with the remaining creditors for a share of the carcass."). *See also*, *id*. ("when a court determines that a debtor's economic value is likely to be greater by dismissing the case rather than converting it, the court maximizes the opportunity of individual creditors to recover their claims").

[35] *Olympic*, 2016 Bankr. LEXIS 3164, at *9 ("The Court was persuaded by the circumstances and evidence presented by the Debtor that the purpose of the Motion was to protect creditors by foregoing the burden of a plan process that would accomplish less for creditors than what could be accomplished through the Dismissal Order.").

[36] *Fleetstar*, 614 B.R. at 782 ("'Essentially, the above factors help the court compare how creditors fare inside, as opposed to outside, bankruptcy.'" (quoting *In re Green Box NA Green Bay, LLC*, 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017) (citing *In re Helmer*s, 361 B.R. 190, 197 (Bankr. D. Kan. 2007)))).

[37] *Camden Ordnance Mfg. Co. of Ark., Inc. v. United States Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 801 (E.D. Pa. 2000) (noting the bankruptcy court's "consideration of the preferences of IMI, Kessler (as the Committee representative), the UST and Highland were appropriate" for analyzing conversion or dismissal under §

with approval of the Compromise Motion, dismissal of the Bankruptcy Case is in the best interest

of the creditors and Estate. Of course, this Motion will be noticed for hearing and afford all parties

in interest the opportunity to oppose the proposed dismissal.[38]

### B. Fundamental Rules and Principles Concerning the Estate and Distribution of Assets Will be Upheld

27.     Structured dismissals can be appropriate provided "'the process includes sufficient

guarantees that fundamental rules and principles governing the administration and distribution of

estate assets [will be] upheld.'"[39] In this vein, courts will consider: "whether the terms of dismissal:

(1) are fair and equitable to all creditors generally; (2) do not rise to the level of a *sub rosa* plan;

and (3) do not violate the absolute priority rule."[40]

28.     This is not a situation where the Debtor is paying two similarly situated classes

different recoveries or imposing distributions that violate the priority rules by skipping classes

without their consent (as was at issue in *Jevic*).[41] To the contrary, all general unsecured claimants

have been/will be paid <u>in full</u> for their prepetition claims. The only difference is the timing of

payment – i.e., before or after dismissal. Regardless, this distinction is without a difference; the

Proposed Orders will specifically dictate that the Debtor is to satisfy the Outstanding Claims within

fifteen (15) days of the Dismissal Date, and until that time, the state law remedies of those holding

---

1112(b)); *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (the preferences of the Debtor and U.S. Trustee provide support for the course of action).

[38] *Buffet Partners*, 2014 Bankr. LEXIS 3204, at *8 ("If appropriate notice is given and the process is fair and does not illegally or unfairly trample on the rights of parties, the [structured dismissal] should be approved.") (alteration to original).

[39] *Fleetstar*, 614 B.R. at 783 (quoting *In re Biolitec, Inc.*, 528 B.R. 261, 269 (Bankr. D.N.J. 2014) (citing *Buffet Partners*, 2014 Bankr. LEXIS 3204, at *3)).

[40] *Olympic*, 2016 Bankr. LEXIS 3164, at *5-6 (citing *Buffet Partners*, 2014 Bankr. LEXIS 3204, at *3).

[41] *Jevic*, 580 U.S. at 455 ("A distribution scheme ordered in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules that apply under the primary mechanisms the Code establishes for final distributions of estate value in business bankruptcies.").

Outstanding Claims will be unaffected by the Bankruptcy Case or its dismissal.

29.     The Debtor is certainly cognizant that JD Bank, as a secured creditor, stands higher in priority than general unsecured claimants.  The Debtor is working with JD Bank a plan to pay amounts currently due and/or refinance JD Bank's secured loans in order to bring the Debtor and its loans back in good standing with JD Bank. Accordingly, JD Bank is supportive of the proposed structured dismissal.

30.     Consequently, there is no violation of the absolute priority rule and the creditors will be treated fairly and equitably. Likewise, as the Debtor desires to pay its remaining prepetition unsecured claims in full within fifteen (15) days of the Dismissal Date, the structured dismissal is not an attempt to short circuit the requirements for a chapter 11 plan, but instead, designed for a legitimate purpose of limiting further administrative expenses.[42] As a result, entry of a structed dismissal is proper under these circumstances.

### C.  To the Extent Imposing Certain Conditions Within the Proposed Orders Depart from 11 U.S.C. § 349(b), Cause Exists to Do So

31.     Ordinarily, a dismissal strives "to return to the prepetition financial status quo."[43] However, "for cause" a court may order otherwise.[44] For instance, in connection with a structured dismissal, courts can attach special conditions "such as 'approving certain distributions to creditors, granting certain third-party releases, enjoining certain conduct by creditors, and not

---

[42] *Olympic*, 2016 Bankr. LEXIS 3164, at *8-9 ("The Debtor had no incentive to circumvent the plan confirmation process and sought dismissal instead for the legitimate purpose of avoiding unnecessary administrative costs because the sale proceeds from the Property were sufficient to pay all allowed claims in full.")

[43] *Jevic*, 580 U.S. at 456 ("A dismissal typically 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case'—in other words, it aims to return to the prepetition financial status quo." (citing 11 U.S.C. § 349(b)).

[44] 11 U.S.C. § 349(b).

necessarily vacating orders or unwinding transactions undertaken during the case.'"[45] These can also include "retention of jurisdiction [and] claims-reconciliation mechanisms[.]"[46]

32. While the Debtor does not wish to depart from 11 U.S.C. § 349(b)(3) vesting all property of the estate in the Debtor as it was before the Petition Date, it submits that cause exists to include certain additional provisions in the Proposed Orders (to the extent they depart from 11 U.S.C. § 349(b)).

### i. Exculpation Provisions

33. Movants seek limited exculpation for the members of the Committee in their capacity as such (the "**Exculpated Parties**"). The exculpation provisions will protect the Exculpated Parties from liability for any actions taken (or omitted to be taken), relating to or in connection with the Bankruptcy Case. Further, the proposed exculpation provisions expressly exclude liability for any acts of gross negligence or willful misconduct on the part of the Exculpated Parties.[47]

34. This Court has approved similar relief in the past.[48] Further, all creditors and other parties in interest in the Bankruptcy Case will be provided with notice of, and an opportunity to

---

[45] *Fleetstar*, 614 B.R. at 783 (quoting *Jevic*, 580 U.S. at 456 (quoting AM. BANKR. INST. COMM'N TO STUDY REFORM OF CHAPTER 11, 2012-2014 FINAL REPORT AND RECOMMENDATIONS 270 (2014))).

[46] *Fleetstar*, 614 B.R. at 783.

[47] *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009) ("The Creditors' Committee and its members are the only disinterested volunteers among the parties sought to be released here. The scope of protection, which does not insulate them from willfulness and gross negligence, is adequate.")

[48] *See e.g.*, *Order Dismissing the Chapter 11 Case* at ¶ 6, In re: Megha, LLC, Case No. 18-51147 (Bankr. W.D. La. Nov. 23, 2020), ECF No. 331 ("From and after the date of this Order, the Trustee and the Trustee's professionals retained in the Chapter 11 Case, (each an 'Exculpated Party' and collectively, the 'Exculpated Parties'), shall be exculpated from any liability for any act taken or omitted to be taken in good faith from the petition date, September 11, 2018, through the date of entry of this Order in connection with or related to the Case, including but not limited to, the implementation of this Order (other than an act in contravention of this Order), except for any claim or cause of action arising from the fraud, gross negligence, or willful misconduct of such party.").

object to, the proposed exculpation. Movants therefore submit that the limited exculpation provisions in the Proposed Orders are appropriate, and request that they be approved.

ii.  Enforcement of Prior Orders

35.  Courts in this circuit have regularly allowed orders, including those approving releases and settlements, assumption and assignment of contracts, and dismissal of adversary proceedings to be given continued effect after a dismissal, notwithstanding § 349 of the Bankruptcy Code.[49] Cause exists to do the same here.

36.  Here, numerous parties in interest, including Movants, the Committee and countless trade creditors—as well as the Debtor's employees, customers, directors, officers, and other stakeholders—have relied and will continue to rely upon the orders entered by the Court in connection with the Bankruptcy Case. For example, all orders issued in connection with the Compromise Motion, including the approval of the Payment Agreement, are critical to the Debtor's continued operations and performance under the Subcontract as it resolves the Disputed Issues – the catalyst for the Debtor to seek protection under the Bankruptcy Code in the first place – and the Court's *Final Order Authorizing Authority to Use Cash Collateral* (the "**Cash Collateral**

---

[49] *See e.g.*, *Order Dismissing the Chapter 11 Case* at ¶ 3, In re: Megha, LLC, Case No. 18-51147 (Bankr. W.D. La. Nov. 23, 2020), ECF No. 331 ("Notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, including, without limitation, section 349 of the Bankruptcy Code, all prior orders, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the Chapter 11 Case and any related adversary proceedings, including, without limitation, the Sale Order [Dkt. 166, 223] and the Final Cash Collateral Order [Dkt. 245], shall remain in full force and effect, shall be unaffected by the dismissal of the Chapter 11 Case, and are specifically preserved for purposes of finality of judgment and res judicata. For the avoidance of doubt, all assets acquired by the Purchaser pursuant to the Sale Order and the Asset Purchase Agreement (all as defined in the Sale Order), shall remain assets of the Purchaser (or a subsequent transferee of Purchaser) following entry of this Order and shall not revest with the debtor pursuant to Bankruptcy Code section 349(b)(3)."); *Order for Structured Dismissal of Chapter 11 Case and Related Relief* at ¶ 2, In re: Great Southern Galvanizing, LLC d/b/a Great States Galvanizing, Case No. 18-10259 (Bankr. M.D. La. Oct. 18, 2018), ECF No. 196 ("Notwithstanding Bankruptcy Code section 349(b)(2) or any other provision of the Bankruptcy Code, all orders entered in this Chapter 11 Case shall survive the dismissal of this Chapter 11 Case."). *See also*, *Huntsville Chrysler Prods. v. GE Capital Corp.*, 2000 U.S. App. LEXIS 41124, at *4 (5th Cir. Jan. 11, 2000) (A bankruptcy court order and adversary proceeding had res judicata effect, disallowing a party to the adversary proceeding from filing claims against the debtor after the bankruptcy case was dismissed.); *In re Miranne*, 87 B.R. 897, 903 (E.D. La. 1988) (A settlement order had effect after dismissal of bankruptcy case.).

**Order**") contains important provisions concerning the Carve-Out (as defined in the Cash Collateral Order).[50]  Similarly, all orders entered in connection with the Assignment Motion, should be preserved as they resulted in substantial prepetition claims being paid by MZJV and permit MZJV to perform the work descoped from the Subcontract.  Not only would it be inequitable and highly prejudicial to all parties in interest to vacate the orders issued in the Bankruptcy Case upon its dismissal, but vacating such orders would be both contrary to the terms of many such orders and, as a practical matter, many of the transactions consummated in reliance upon those orders would be both infeasible and cost-prohibitive to unwind.

37.    Given the circumstances and posture of the Bankruptcy Case, Movants submit that ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court in connection with the Bankruptcy Case, including without limitation the following, to be given continued effect and to survive the dismissal of the Bankruptcy Case, notwithstanding section 349(b)(2) of the Bankruptcy Code, or any other provision of the Bankruptcy Code and the requested dismissal:

(i)    *Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 12, 2022), ECF No. 142;

(ii)    *Order (I) Authorizing the Payment of Certain Critical Prepetition (A) Job Costs in the Ordinary Course of Business and (B) Revolving Credit Card Debt; (II) Releasing Claims Against COMDATA; (III) Authorizing Post Petition Credit Under § 364; and (IV) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 16, 2022), ECF No. 165;

(iii)    *Order Granting Ex Parte Agreed Motion to Amend Budget in Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 21, 2022), ECF No. 177;

(iv)    *Order Approving Joint Motion for Compromise*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 9, 2023), ECF No. 236;

---

[50] *Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 12, 2022), ECF No. 142 (as amended by ECF Nos. 177, 248, and 249).

(v)    *Order Granting Second* <u>*Ex Parte*</u> *Agreed Motion to Amend Budget in Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 20, 2023), ECF No. 248;

(vi)   *Order Granting Third* <u>*Ex Parte*</u> *Agreed Motion to Amend Budget in Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 20, 2023), ECF No. 249;

(vii)  *Order Granting Emergency Motion for an Order (I) Authorizing the Payment of Certain Critical Prepetition Vendor Costs in the Ordinary Couse of Business and (II) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Mar. 29, 2023), ECF No. 266;

(viii) *Order Granting* <u>*Ex Parte*</u> *Motion to Authorize Entry into Agreement*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 4, 2023), ECF No. 272;

(ix)   *Order Granting First Interim Fee Application of Stewart Robbins Brown & Altazan LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Alfred Miller Contracting Company for the Period of November 14, 2022 through February 28, 2023*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 20, 2023), ECF No. 285;

(x)    *Order*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 20, 2023), ECF No. 286; and

(xi)   *Order Granting Joint First Omnibus Motion for Entry of an Order (I) Authorizing the Debtor to Assume and Assign Certain Executory Contracts to MZJV-GPX and (II) Granting Related Relief*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Apr. 28, 2023), ECF No. 291.

iii.   <u>Retention of Jurisdiction</u>

38.    Movants respectfully ask that any order entered by the Court granting the relief requested herein specify that this Court shall retain jurisdiction to hear and determine all matters, claims, rights or disputes arising from or related to the implementation, interpretation and/or enforcement of such order, and any order entered in the Bankruptcy Case. Such relief has been afforded by bankruptcy courts within this circuit, including this Court.[51]

---

[51] *See e.g., Order Dismissing the Chapter 11 Case* at ¶ 10, In re: Megha, LLC, Case No. 18-51147 (Bankr. W.D. La. Nov. 23, 2020), ECF No. 331 ("This Court shall retain jurisdiction to hear and determine all matters, claims, rights or disputes arising from or related to the implementation, interpretation and/or enforcement of this Order, any other

## II.     Final Fee Applications

39.     In connection with the dismissal of the Bankruptcy Case, and notwithstanding any provisions to the contrary in the Court's prior orders concerning compensation, Movants seek the Court's approval of procedures for the final payment of Professional Fees and expenses incurred by Professionals on behalf of the Debtor, the Committee and JD Bank throughout the Bankruptcy Case.[52]

40.     Specifically, Movants request that the Court schedule a final omnibus fee hearing for May 24, 2023 at 10:30 a.m.    Movants further request that the Court require all Professionals retained in the Bankruptcy Case to file, by May 12, 2023, Final Fee Applications for (a) Professional Fees incurred from the Petition Date up to and including May 11, 2023, and (b) estimated Professional Fees that are expected to be incurred through the Dismissal Date (*i.e.*, for the period May 12, 2023 through, approximately, May 31, 2023).  Movants further request that the Court require any objections to the Final Fee Applications be filed and served on counsel for the Debtor and the applicable Professional by May 22, 2023 at 12:00 p.m. (prevailing Central Time).

## III.     The Certification Process and the Request for Entry of the Proposed Orders is Reasonable Under the Circumstances

---

orders entered in the Case."); *Order for Structured Dismissal of Chapter 11 Case and Related Relief* at ¶ 15, In re: Great Southern Galvanizing, LLC d/b/a Great States Galvanizing, Case No. 18-10259 (Bankr. M.D. La. Oct. 18, 2018), ECF No. 196 ("This court retains jurisdiction to hear and determine all matters, claims, rights or disputes arising from or related to the implementation, interpretation and/or enforcement of this order, any other orders entered in the Chapter 11 Case.").

[52] *Order Granting Emergency Motion for Administrative Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Nov. 21, 2022), ECF No. 70; *Final Order Authorizing Employment of Counsel for Debtor-in-Possession*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 8, 2022), ECF No. 128; *Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 12, 2022), ECF No. 142; *Interim Order Approving Employment of William H. Patrick, III, Tristan Manthey, Cherie Dessauer Nobles and the Law Firm of Fishman Haygood, LLP, as Counsel to the Official Committee of Unsecured Creditors Nunc Pro Tunc*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 16, 2022), ECF No. 164; *Order Granting Ex Parte Agreed Motion to Amend Budget in Final Order Authorizing Authority to Use Cash Collateral*, In re: Alfred Miller Contracting Company, Case No. 22-20400 (Bankr. W.D. La. Dec. 21, 2022), ECF No. 177.

41.     As soon as reasonably practicable following the filing of a certification of counsel stating that the conditions precedent to dismissal have been met (the "**Certification**"), the Debtor requests that the Court enter the Dismissal Order. Among other things, the Certification will verify that:

(i)     all monthly operating reports of the Debtor, including the report for the month in which the case is to be closed, have been filed;

(ii)    all quarterly fees (the "**Quarterly Fees**") owed to the UST in the Bankruptcy Case have been paid in full;

(iii)   the Professional Fees incurred in the Bankruptcy Case have been approved on a final basis (to the extent applicable) and paid in full; and

(iv)    the Certification was provided to the U.S. Trustee before its filing, and shall indicate whether the U.S. Trustee concurs that all Quarterly Fees have been paid.

The Dismissal Order will dismiss the Bankruptcy Case immediately upon entry.

42.     The Debtor intends to serve the Certification on (i) counsel to the Committee, (ii) counsel to the UST, (iii) JD Bank and (iv) all entities that have requested notice pursuant to Bankruptcy Rule 2002, but will not send the Certification to the Debtor's entire matrix of creditors and parties in interest, as such parties will receive reasonable notice of the proposed dismissal through notice of the present Motion.

## NOTICE

43.     The Debtor will serve a copy of this Motion on: (i) the UST; (ii) the Committee; (iii) JD Bank; (iv) all creditors of the Debtor; (v) those parties who have filed notices of appearance and/or requested service of all motions and pleadings in the Bankruptcy Case prior to the date of service hereof; and (vi) all parties that have filed proofs of claim.

**WHEREFORE**, Movants respectfully requests entry of the Proposed Orders, substantially in the form annexed hereto as Exhibit A and, upon the filing of the Certification, Exhibit B, and

for such other and further relief deemed just and proper.

Dated: May 4, 2023

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     /s/ Brooke W. Altazan
        Paul Douglas Stewart, Jr. (La. #24661)
        dstewart@stewartrobbins.com
        William S. Robbins (La. #24627)
        wrobbins@stewartrobbins.com
        Brandon A. Brown (La. #25592)
        bbrown@stewartrobbins.com
        Brooke W. Altazan (La. #32796)
        baltazan@stewartrobbins.com
        Nicholas J. Smeltz (La. #38895)
        nsmeltz@stewartrobbins.com

        *Counsel for Alfred Miller Contracting Company*


        */s/ Michael D. Rubenstein [With Permission]*
        Michael D. Rubenstein (Bar #22860)
        LIKOW & LEWIS
        1001 Fannin Street, Suite 1800
        Houston, Texas 77002
        Telephone: (713) 651-2953
        mdrubenstein@liskow.com

            - and -

        John B. Thomas, attorney-in-charge
        (admitted pro hac vice)
        HICKS THOMAS LLP
        700 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone: (713) 547-9100
        jthomas@hicks-thomas.com

        **ATTORNEYS FOR MZJV-GPX**

**JOINT MOTION FOR ENTRY OF INITIAL AND FINAL ORDERS (I) DISMISSING THE BANKRUPTCY CASE; (II) ESTABLISHING PROCEDURES AND DEADLINES WITH RESPECT TO FINAL FEE APPLICATIONS FOR ALL PROFESSIONALS; (III) EXCULPATING CERTAIN PARTIES FROM LIABILITY IN CONNECTION WITH THE BANKRUPTCY CASE; (IV) PRESERVING THE COURT'S PRIOR ORDERS; AND (V) GRANTING RELATED RELIEF**

**EXHIBIT "A"**
**PROPOSED INITIAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

IN RE:                                                     **CASE NO. 22-20400**

**ALFRED MILLER CONTRACTING COMPANY,**
    *Debtor*[1]                                              **CHAPTER 11**

---

### INITIAL ORDER APPROVING (I) DISMISSAL OF THE BANKRUPTCY CASE; (II) ESTABLISHING PROCEDURES AND DEADLINES WITH RESPECT TO FINAL FEE APPLICATIONS FOR ALL PROFESSIONALS; AND (III) GRANTING RELATED RELIEF

---

      **CONSIDERING** the *Joint Motion for Entry of Initial and Final Orders (I) Dismissing the Bankruptcy Case; (II) Establishing Procedures and Deadlines with Respect to Final Fee Applications for All Professionals; (III) Exculpating Certain Parties from Liability in Connection with the Bankruptcy Case; (IV) Preserving the Court's Prior Orders; and (V) Granting Related Relief* [ECF No. ____] (the "**Motion**")[2] filed by Alfred Miller Contracting Company (the

---

[1] The last four digits of the Debtor's federal tax identification number are 2446. The Debtor's principal place of business is located at 1177 L Miller Road; Lake Charles, LA 70605.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

"**Debtor**"), chapter 11 debtor-in-possession in the above captioned bankruptcy case (the "**Bankruptcy Case**")[1] and MZJV-GPX, an unincorporated joint venture between CB&I LLC, a Texas Limited Liability Company, and Zachry Industrial, Inc., a Delaware corporation, and this Court having found that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) notice of the Motion was sufficient; (v) the relief requested in the Motion is in the best interests of the Debtor and its Estate, creditors, and other parties in interest; (vi) good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion,

**IT IS HEREBY ORDERED THAT**:

1.      Each of the Professionals retained in the Bankruptcy Case (including Professionals retained by the Debtor) shall (a) by May 12, 2023, file a final fee application (a "**Final Fee Application**") for (a) Professional Fees and expenses incurred from the Petition Date up to and including May 11, 2023, and (b) estimated Professional Fees and expenses that are expected to  be incurred through the Dismissal Date (*i.e.*, for the period May 12, 2023 through, approximately, May 31, 2023); provided, that each Professional shall be required to file by May 26, 2023 at 4:00 p.m. (Central Time) a supplement to its Final Fee Application setting forth the actual fees and expenses incurred by such Professional from May 12, 2023 up through and including May 26, 2023.  The Final Fee Applications shall be in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, the *Order Granting Emergency Motion for Administrative Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing*

---

[1] The chapter 11 bankruptcy estate of Alfred Miller Contracting Company is herein referred to as the "**Estate**".

*Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [ECF No. 70], the *Final Order Authorizing Employment of Counsel for Debtor-in-Possession* [ECF No. 128], the *Final Order Authorizing Authority to Use Cash Collateral* [ECF No. 142], the *Interim Order Approving Employment of William H. Patrick, III, Tristan Manthey, Cherie Dessauer Nobles and the Law Firm of Fishman Haygood, LLP, as Counsel to the Official Committee of Unsecured Creditors Nunc Pro Tunc* [ECF No. 164], and the *Order Granting Ex Parte Agreed Motion to Amend Budget in Final Order Authorizing Authority to Use Cash Collateral* [ECF No. 177, as amended by ECF Nos. 177, 248, and 249]. Any objections to the Final Fee Applications shall be filed and served on counsel for the Debtor and the Professional submitting the application to which an objection is being filed by May 22, 2023 at 12:00 p.m. (prevailing Central Time). The Court will hold a hearing, if necessary, on May 24, 2023 at 10:30 a.m. (prevailing Central Time), to resolve any disputes related to fee applications, or to address any questions or concerns of the Court regarding the same.

       2.      As soon as reasonably practicable following the completion of (a) the filing of all monthly operating reports of Debtor, including the report for the month in which the case is to be closed, (b) the payment of all quarterly fees due and owing in the Bankruptcy Case to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930, including those for the quarter in which the case is to be closed (the "**Quarterly Fees**"), and (c) the payment in full of all Professional Fees and expenses approved on a final basis (to the extent applicable), the Debtor may file a certification (the "**Certification**") of counsel requesting entry of the Dismissal Order, which shall attach a form of order dismissing the Bankruptcy Case substantially in the form annexed to the Motion as Exhibit B. Among other things, the Certification should verify that:

        (i)      all monthly operating reports of the Debtor, including the report for the month in which the case is to be closed, have been filed;

(ii)    all Quarterly Fees in the Bankruptcy Case have been paid in full;

(iii)    the Professional Fees incurred in the Bankruptcy Case have been approved on a final basis (to the extent applicable) and paid in full; and

(iv)    the Certification was provided to the U.S. Trustee before its filing, and shall indicate whether the U.S. Trustee concurs that all Quarterly Fees have been paid.

3.      The Certification shall be served only on the counsel to the Committee, the U.S. Trustee, JD Bank, and all entities that have requested notice pursuant to Bankruptcy Rule 2002, and no further notice regarding the dismissal of the Bankruptcy Case shall be required.

4.      Notwithstanding any provision of this Order to the contrary, the obligation of the Debtor to file monthly operating reports and to pay Quarterly Fees to the U.S. Trustee shall continue until the Bankruptcy Case is dismissed pursuant to the provisions of this Order.

5.      Within fifteen (15) days of the Dismissal Date, the Debtor shall pay, in full, all Outstanding Claims (as defined in the Motion), and until they are satisfied, all non-bankruptcy state law rights as to all holders of Outstanding Claims are preserved.

6.      To the extent applicable, Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective and enforceable immediately upon entry.

7.      The Debtor is authorized to take any and all actions necessary to effectuate the relief granted pursuant to this Order.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # #

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     /s/ Brooke W. Altazan
         Brooke W. Altazan (La. #32796)
         baltazan@stewartrobbins.com
         Paul Douglas Stewart, Jr. (La. #24661)
         dstewart@stewartrobbins.com
         Brandon A. Brown (La. #25592)
         bbrown@stewartrobbins.com
         Nicholas J. Smeltz (La. #38895)
         nsmeltz@stewartrobbins.com

         ***Counsel for Alfred Miller Contracting Company***

**JOINT MOTION FOR ENTRY OF INITIAL AND FINAL ORDERS (I) DISMISSING THE BANKRUPTCY CASE; (II) ESTABLISHING PROCEDURES AND DEADLINES WITH RESPECT TO FINAL FEE APPLICATIONS FOR ALL PROFESSIONALS; (III) EXCULPATING CERTAIN PARTIES FROM LIABILITY IN CONNECTION WITH THE BANKRUPTCY CASE; (IV) PRESERVING THE COURT'S PRIOR ORDERS; AND (V) GRANTING RELATED RELIEF**

**EXHIBIT "B"**
**PROPOSED DISMISSAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

IN RE:                                                    CASE NO. 22-20400

**ALFRED MILLER CONTRACTING COMPANY,**
    *Debtor* [1]                                          CHAPTER 11

---

**ORDER GRANTING JOINT MOTION FOR ENTRY OF INITIAL AND FINAL
ORDERS (I) DISMISSING THE BANKRUPTCY CASE; (II) ESTABLISHING
PROCEDURES AND DEADLINES WITH RESPECT TO FINAL FEE APPLICATIONS
FOR ALL PROFESSIONALS; (III) EXCULPATING CERTAIN PARTIES FROM
LIABILITY IN CONNECTION WITH THE BANKRUPTCY CASE; (IV) PRESERVING
THE COURT'S PRIOR ORDERS; AND (V) GRANTING RELATED RELIEF**

---

**PURSUANT TO** the (i) *Joint Motion for Entry of Initial and Final Orders (I) Dismissing
the Bankruptcy Case; (II) Establishing Procedures and Deadlines with Respect to Final Fee
Applications for All Professionals; (III) Exculpating Certain Parties from Liability in Connection
with the Bankruptcy Case; (IV) Preserving the Court's Prior Orders; and (V) Granting Related*

---

[1] The last four digits of the Debtor's federal tax identification number are 2446. The Debtor's principal place of
business is located at 1177 L Miller Road; Lake Charles, LA 70605.

*Relief* [ECF No. ____] (the "**Motion**") [1] filed by Alfred Miller Contracting Company (the "**Debtor**"), chapter 11 debtor-in-possession in the above captioned bankruptcy case (the "**Bankruptcy Case**")[2] and MZJV-GPX, an unincorporated joint venture between CB&I LLC, a Texas Limited Liability Company, and Zachry Industrial, Inc., a Delaware corporation, (ii) the *Initial Order Approving (I) Dismissal of the Bankruptcy Case; (II) Establishing Procedures and Deadlines with Respect to Final Fee Applications for All Professionals; and (III) Granting Related Relief* [ECF No. ____]; and (iii) the *Certification of Counsel and Request for Entry of an Order Dismissing the Chapter 11 Case*, filed on _____, 2023, it is hereby

### ORDERED, ADJUDGED AND DECREED THAT:

1.      Pursuant to sections 305 and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(a), the Bankruptcy Case is hereby dismissed, effective as of the date and time of the entry of this Order (the "**Dismissal Date**").   To the extent applicable, the 14-day stay to effectiveness of this Order provided by Bankruptcy Rule 6004(h) is waived and this Order shall be effective and enforceable immediately upon entry.

2.      Within twenty days of the Dismissal Date, the Debtor shall (a) file any monthly operating report remaining unfiled and (b) pay all quarterly fees remaining due the United States Trustee in the Bankruptcy Case.

3.      Notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, including, without limitation, section 349 of the Bankruptcy Code, all prior orders, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the Bankruptcy Case and any related adversary proceedings, shall

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[2] The chapter 11 bankruptcy estate of Alfred Miller Contracting Company is herein referred to as the "**Estate**".

remain in full force and effect, shall be unaffected by the dismissal of the Bankruptcy Case, and are specifically preserved for purposes of finality of judgment and *res judicata*.

4.        Each of the Professionals' retentions in the Bankruptcy Case is terminated without the need for further action on the part of this Court, the Debtor, or such firms.

5.        The Committee is hereby dissolved without need for further action on the part of this Court or the Committee or its members; <u>provided</u>, <u>however</u>, that obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered into during the Bankruptcy Case shall remain in full force and effect in accordance with their terms.

6.        From and after the date of this Order, the members of the Committee in their capacity as such (each an "**<u>Exculpated Party</u>**" and collectively, the "**<u>Exculpated Parties</u>**"), shall be exculpated from any liability for any act taken or omitted to be taken from the Committee's formation through the date of entry of this Order in connection with or related to the Bankruptcy Case, including but not limited to, the implementation of this Order (other than an act in contravention of this Order), except for any claim or cause of action arising from the fraud, gross negligence, or willful misconduct of such party.

7.        Within fifteen (15) days of the Dismissal Date, the Debtor shall pay, in full, all Outstanding Claims (as defined in the Motion), and until they are satisfied, all non-bankruptcy state law rights as to all holders of Outstanding Claims are preserved.

8.        The Debtor is hereby authorized and empowered to take any and all steps necessary and appropriate to effectuate the terms of this Order.

9.        Notwithstanding the dismissal of the Bankruptcy Case, to the extent allowed by applicable law, this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation, interpretation, or enforcement of this or any

other Order of this Court entered in the Bankruptcy Case.

10.     Pursuant to section 349(b)(3) of the Bankruptcy Code, all property of the Estate remaining immediately following the Dismissal Date shall re-vest in the Debtor.

# # #

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     /s/ Brooke W. Altazan
        Brooke W. Altazan (La. #32796)
        baltazan@stewartrobbins.com
        Paul Douglas Stewart, Jr. (La. #24661)
        dstewart@stewartrobbins.com
        Brandon A. Brown (La. #25592)
        bbrown@stewartrobbins.com
        Nicholas J. Smeltz (La. #38895)
        nsmeltz@stewartrobbins.com

        ***Counsel for Alfred Miller Contracting Company***